78 F.3d 604
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Richard B. BAKER, Petitioner,
v.
DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.
 No. 95-3698.
 United States Court of Appeals, Federal Circuit.
 Feb. 12, 1996.
 
 Before MAYER, MICHEL and BRYSON, Circuit Judges.
 DECISION
 MICHEL, Circuit Judge.
 
 
 1
 Richard B. Baker petitions this court to review the decision of the Merit Systems Protection Board (MSPB or Board), in docket No. DC-0752-93-0699-I-1, which affirmed an agency action suspending him from his position as Lead Computer Operator, GS-09, assigned to the National Library of Medicine, National Institutes of Health (NIH), Bethesda, Maryland, effective July 28, 1993, for a period of 30 days. The December 20, 1993 initial decision became the final decision of the Board on May 12, 1994, when the Board denied Mr. Baker's petition for review. As the Administrative Judge's (AJ's) determination, that the NIH acted reasonably in deciding to suspend Mr. Baker, is supported by substantial evidence, we affirm the decision of the Board.
 
 DISCUSSION
 
 2
 On February 3, 1992, Mr. Baker sustained an employment-related lower back and knee injury for which he underwent orthoscopic surgery and for which Mr. Baker received temporary disability. The orthoscopic procedure occurred on December 16, 1992, during which Mr. Baker experienced ventricular tachycardia for a period of 20-25 seconds that corrected itself spontaneously but required further evaluation and care. On February 19, 1993, Mr. Baker was examined by his orthopedic surgeon, Dr. William Sadlack, M.D., and was determined fit to return to work on February 22, 1993, with no restrictions from an orthopedic standpoint. Dr. Sadlack's determination followed an examination conducted by Dr. Samual D. Goldberg, M.D., and Dr. Roger Stevenson, M.D., cardiologists, who concluded that Mr. Baker was free from cardiac symptoms. It was during this examination that the possibility that Mr. Baker suffered from sleep apnea syndrome, a sleeping disorder, was detected. Mr. Baker subsequently underwent a sleep study at the National Capital Sleep Center in Bethesda, Maryland, and received treatment from Dr. Gary H. Miller, M.D.
 
 
 3
 Although released by his orthopedist for work starting on February 22, 1993, Mr. Baker did not report for work until April 23, 1993. On April 23, William J. Hagarty, Mr. Baker's supervisor, proposed Mr. Baker be removed from his position of Lead Computer Operator for 360 hours of absence without leave (AWOL) from February 22 through April 23. On May 12, Mr. Baker filed a timely response to the proposed removal explaining that his absence after February 22, 1993, was caused by his continued medical incapacitation. Mr. Baker provided the Occupational Medical Service (OMS) with medical documentation to support his absence. Upon review of this documentation, Dr. James Schmitt, Medical Director, OMS, NIH, determined that the documentation supported the determination that Mr. Baker's medical condition precluded him from being at work through March 9, 1993, but did not support his absence between March 10 and April 23, 1993. On July 26, 1993, the deciding officer, Harry Bennett, informed Mr. Baker that he decided to suspend him for 30 days, instead of removing him, for his unauthorized absence between March 10 and April 23, 1993.
 
 
 4
 In his original appeal to the MSPB, Mr. Baker contested his 30-day suspension on the grounds that (1) he was medically incapacitated from March 10 through April 23, 1993; (2) his absence was supported by sufficient documentation; (3) the agency did not warn him that his actions could lead to removal or suspension; and (4) the agency failed to accommodate his illness. After a hearing on November 23, 1993, where several witnesses testified, including Dr. Gary Miller, Dr. James Schmitt, William Hagarty, Harry Bennett, Mr. Baker, and his wife, the AJ affirmed the agency's 30-day suspension in an initial decision dated December 20, 1993. Mr. Baker then filed a petition for review which was denied on May 12, 1994, as it did not meet the criteria for review set forth in the Code of Federal Regulations. The Board's denial made the initial decision final, and this appeal followed.
 
 
 5
 This court must affirm the Board's decision unless it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1994).
 
 
 6
 Mr. Baker, in his petition for review, challenges the AJ's decision to uphold the agency's action on two main grounds: (1) the AJ's failure to adequately consider Mr. Baker's medical evidence including his medical expert in determining that his absence should be charged as being AWOL; and (2) the AJ's finding that the 30-day suspension was reasonable.
 
 
 7
 I. As the decision reveals, the AJ went to great length in evaluating Mr. Baker's medical evidence, including the testimony of Dr. Miller. And the agency never disputed Mr. Miller's diagnosis of sleep apnea or his proscribed treatment by a continuous positive airway pressure (CPAP) device. Instead, the agency contended that Mr. Baker's condition, as described by Dr. Miller, did not prevent him from reporting to work from March 10 to April 23. Dr. Miller did not testify that sleep apnea prevented Mr. Baker from reporting to or performing his duties at work. Instead, Dr. Miller testified that it would be best if Mr. Baker did not work in his routine shift (late night), and that he would be working in an impaired state.
 
 
 8
 Dr. Miller testified that it generally took one month for a patient to become accustomed to the CPAP device, which had been fitted on Mr. Baker on February 5, 1993, and had suggested Mr. Baker could return to work on February 23, 1993. Although, Mr. Baker did not meet with Dr. Miller again until March 16, he did not return to work, even without any further instructions from his doctor. At the March 16 appointment, Dr. Miller anticipated Mr. Baker could return to work on April 6, but he did not return to work until April 23, also without further instructions from his doctor. Dr. Miller did subsequently provide Mr. Baker with "sick certificates," but only after the fact, and the certificates specified nothing except that Mr. Baker was under Dr. Miller's care. Also, Mr. Baker argued that a respiratory infection made it take longer to adjust to the CPAP than normal, but Dr. Miller had not instructed Mr. Baker to stay home each time he developed a complication using the CPAP device. There is thus no record evidence to support Mr. Baker's allegation that he was medically unfit to report to work during the period or even that he was absent from work based on his doctor's orders. Accordingly, the AJ's finding that Mr. Baker's absence should be charged as AWOL was supported by substantial evidence.
 
 
 9
 II. An agency must weigh several factors in determining an appropriate penalty for a government employee. These factors, set forth in Douglas v. Veterans Administration, 5 M.S.P.R. 280, 305 (1981), include the nature and seriousness of the employee's offense, the employee's past disciplinary record, the adequacy and effectiveness of alternative sanctions, the type of employment, the employee's job level and whether the offense was intentional or committed maliciously. This list is not exhaustive, and when the agency's decision is reviewed by the MSPB, it should determine only whether "a responsible balance within tolerable limits of reasonableness" was achieved. Id. at 306.
 
 
 10
 Mr. Baker argues that the agency's decision was unreasonable as there was no misconduct on his part, and he acted reasonably and in good faith in not reporting to work. However, whether the employee acted maliciously or intentionally is only one of several Douglas factors. In addition, as pointed out by the AJ, his task is to assess whether the agency acted reasonably, not whether Mr. Baker had. Testimony was presented that the Douglas factors had been considered: Mr. Bennett, the deciding official, testified that the various Douglas factors were part of his decision process in deciding to suspend Mr. Baker as opposed to removing him as suggested by Mr. Hagarty. The record contains substantial evidence to support the AJ's determination that the 30-day suspension of Mr. Baker was reasonable.